TIMOTHY D. BAKER *vs.* FRED H. SEAVEY.

Suffolk. March 15, 1895. — May 24, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Equitable Assignment of Mortgaged. Personalty — Action for Conversion of Mortgaged Personalty by Second Mortgagee — Estoppel — Conversion — Attachment — Evidence — Value.*

An equitable assignment of a mortgage does not entitle the assignee to maintain an action in his own name for the conversion of the property mortgaged.

A second mortgagee who is not in actual possession of the property covered by his mortgage, and is not entitled to the immediate possession thereof, cannot maintain an action for its conversion.

If an officer of a corporation, who is also a mortgagee of its property, in reply to inquiries concerning the financial standing of the company, falsely represents that its property is unencumbered, with intent to induce a sale of goods to it on credit, he is later estopped to set up his mortgage against the attachment of one who sold goods to the company relying on his statements, or against an officer who acted for the creditor in making the attachment.

In an action by a mortgagee against an officer for the conversion of the mortgaged property, the plaintiff must recover, if at all, upon the strength of his own title, and it is competent for the defendant to introduce evidence to show that the plaintiff had no title to a portion of the property.

In an action by a mortgagee of personal property against an officer for the conversion of the mortgaged property, which was attached by him in an action against the mortgagor, the defendant may show that certain articles claimed by the plaintiff were not attached.

The price of goods obtained at a sale by auction is competent evidence on the question of value.

TORT, for the conversion of personal property. Writ dated March 21, 1890. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, which, so far as material, is as follows.

The defendant, a deputy sheriff of the county of Suffolk, on January 15, 1890, attached certain furniture and fixtures in a restaurant at 737 Washington Street in Boston, as the property of the Boston Café Company, in an action brought against it by the Smith and Anthony Stove Company, and in his return on the writ stated that he had "attached certain goods and chattels as the property of the " Boston Café Company. The defendant afterwards removed the goods from the restaurant, and caused them to be sold at public auction.

At the time of the attachment of the property by the defendant, it was subject to two mortgages held by the plaintiff. The first mortgage, dated January 13, 1889, was made by one Wyman, payable to one E. A. Brown, from whom, on October 16, 1889, it was purchased for value by the plaintiff. It appeared that at the time of the purchase of the mortgage Brown delivered it to the plaintiff, together with the notes secured thereby, duly indorsed, under an oral agreement to assign it to him in writing, but that he did not so assign it to the plaintiff until July 13, 1891. The second mortgage, also given by Wyman, was payable to the plaintiff, and was dated and delivered to him on December 20, 1889. Before the attachment of the defendant the equity of redemption in the property covered by the mortgages was transferred by Wyman to the Boston Café Company.

After the plaintiff had come into possession of the mortgages, and before the attachment of the property by the defendant, it appeared that one Morandi, an agent of the Smith and Anthony Stove Company, went to the plaintiff, who was an officer of the Boston Café Company, and inquired of him the standing of that company, and whether the property in the store on Washington Street belonged to it, and whether or not such property was encumbered; that he was informed by the plaintiff that the property was unencumbered, and that the Smith and Anthony Stove Company, relying on the plaintiff's statement, afterwards sold goods to the Boston Café Company on credit.

The defendant offered evidence to show that the plaintiff had no title to certain of the articles claimed by him, and that certain other articles claimed by him were not attached by the defendant. He also offered evidence of the prices obtained for the goods at the sale by auction, but the evidence was excluded.

The defendant made various requests for rulings, the second, third, sixth, and ninth of which were as follows:

" Second. If it shall appear upon all of the evidence that one E. A. Brown had agreed before the time of the beginning of this action to assign the first mortgage, mentioned in the plaintiff's notice to the defendant, to the plaintiff, but omitted so to do, and an assignment in writing of the said mortgage was not made until after the bringing of this action, then the plaintiff cannot maintain this action in his own name against the defendant for the value of any goods which might be covered by the said first mortgage.

" Third. If it shall appear that there was no legal assignment of the first mortgage to the plaintiff before the commencement of this action, and it shall appear that he was a *bona fide* holder of the second mortgage, then as owner and holder of the said second mortgage he cannot maintain this action of trover against the defendant."

" Sixth. A second mortgagee not in possession cannot maintain the action of trover for the conversion of the goods covered by his mortgage."

" Ninth. If the jury shall find that Morandi, acting as agent of the Smith and Anthony Stove Company, in good faith went to the plaintiff while he was an officer of the Boston Café Company and made inquiries concerning the standing of the company, and inquiries as to whether the property contained in said store at 737 Washington Street belonged to the said Boston Café Company and was encumbered, and in reply to the said question, or questions of the said Morandi the plaintiff in this action informed the said Morandi that the said property contained in said store was free and clear and not encumbered by any mortgages, and that at the time the said plaintiff in this action knew that the said property was encumbered by both the mortgages under which he now claims, and if he shall have made the state-

ments with the intent that the said Morandi, as agent of the said Smith and Anthony Stove Company, should give credit to the said Boston Café Company, and said Morandi thereafter did give credit to the Boston Café Company, relying upon the statement of the plaintiff, and the said Smith and Anthony Stove Company, by Morandi, its agent, did place certain goods in and upon the premises at 737 Washington Street, and at other places owned by the said Café Company, then the plaintiff in this action would be estopped from setting up as against the Smith and Anthony Stove Company, or its agents, the mortgages which were in existence at the time of the statement made by him that the property was free and clear, and the jury must treat said mortgages as though they were not in existence, but extinguished as far as this case is concerned, and must render a verdict for the defendant."

The judge declined to rule as requested, and instructed the jury in substance, that the plaintiff was under no obligation to state whether the property was encumbered or not, and that if he chose to misrepresent, however wrong it was, his legal rights would not be affected if he had valid and subsisting mortgages at the time.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. W. Bartlett & E. R. Anderson,* for the defendant.

*P. H. Cooney,* for the plaintiff.

ALLEN, J.  1. The plaintiff, by reason of the equitable assignment of the first mortgage to him, acquired a right which to some extent a court of law will recognize and protect; but such an equitable assignment will not entitle him to maintain an action at law in his own name for the conversion of the property, and the jury should have been so instructed, in conformity to the defendant's second request. *Crain* v. *Paine,* 4 Cush. 483. *Norton* v. *Piscataqua Ins. Co.* 111 Mass. 532. *Rogers* v. *Union Stone Co.* 134 Mass. 31. *Moore* v. *Spiegel,* 143 Mass. 413. *Coulter* v. *Haynes,* 146 Mass. 458. Such action can only be maintained in the name of the mortgagee.

2. The plaintiff in his capacity of second mortgagee cannot maintain an action for the conversion of the property, because he was not in actual possession, and as second mortgagee was not

entitled to the immediate possession. *Rugg* v. *Barnes*, 2 Cush. 591. *Ring* v. *Neale*, 114 Mass. 111. *Clapp* v. *Campbell*, 124 Mass. 50. The defendant's third and sixth requests presented the technical question as to the form of action which the plaintiff as second mortgagee could maintain. In substance these requested instructions were right, and a second mortgagee's ground of action should be set forth in a different form. *Forbes* v. *Parker*, 16 Pick. 462.

3. The ninth request for instructions related to the question of estoppel, and this also should have been given. It is not denied that there was evidence tending to prove the facts assumed in the request. But the plaintiff contends, as a reason for avoiding the supposed estoppel, that the creditors of the Café Company did not acquire or contemplate acquiring any title or interest in the property in consequence of his supposed representations; that they entered into no binding agreement by which they undertook to sell goods to that company on credit; and that if they should so sell goods on credit they would thereby acquire no title in the property of the company. In short, the plaintiff's argument is that the connection between the supposed representations and the loss to the creditors is not close enough. In support of this view, he cites *Bradley* v. *Fuller*, 118 Mass. 239, which was an action to recover damages for misrepresentations by reason of which the plaintiff forbore to make an attachment of property; and in which it was held that the plaintiff lost nothing which he had, and that he had sustained no legal damage. *Dudley* v. *Briggs*, 141 Mass. 582, is similar in principle. But the rule as held in those cases is not applicable to the case at bar. Here, according to the assumptions in the request for instructions, the misrepresentations were made with intent to induce the creditors to part with their property, and the creditors relying thereon did in fact part with their property, by selling it to the Café Company on credit. Under such circumstances, the objection that the connection was not close enough between the misrepresentations and the loss of property would not avail, even in defence to an indictment for obtaining goods by false pretences. *Commonwealth* v. *Davidson*, 1 Cush. 33. 2 Bish. Crim. Law, (8th ed.) § 437. Whart. Crim. Law, § 1135. But we have not to determine whether an indictment, or even

an action, would lie against the plaintiff. The question before us is, whether, upon the assumed facts, the plaintiff is now estopped to set up his mortgages against the attaching creditors and the defendant, who as an officer acted for them in making the attachment. And we cannot doubt that he is. In *Carr* v. *London & Northwestern Railway,* L. R. 10 C. P. 307, 316, the rule as to estoppel arising from intentional acts or words is thus carefully expressed: "If a man by his words or conduct wilfully endeavors to cause another to believe in a certain state of things which the first knows to be false, and if the second believes in such state of things, and acts upon his belief, he who knowingly made the false statement is estopped from averring afterwards that such a state of things did not in fact exist." This is in substance the rule which has often been recognized and acted on in this Commonwealth. *Plumer* v. *Lord,* 9 Allen, 455. *Langdon* v. *Doud,* 10 Allen, 433. *Turner* v. *Coffin,* 12 Allen, 401. *Tobey* v. *Chipman,* 13 Allen, 123. *Fall River National Bank* v. *Buffinton,* 97 Mass. 498. *Hinchley* v. *Greany,* 118 Mass. 595. *Moore* v. *Spiegel,* 143 Mass. 413. *Short* v. *Currier,* 150 Mass. 372. The assumed facts bring the present case within this rule, and the defendant was entitled to have the jury instructed in accordance with his ninth request.

4. The questions of evidence presented by the bill of exceptions, to a considerable extent, would not probably arise again in the same form. Without dealing with them in detail, it will probably be sufficient if we express our opinion upon a few general propositions involved therein.

The plaintiff must recover, if at all, upon the strength of his own title, and it was therefore competent for the defendant to introduce evidence to show that the plaintiff had no title to certain of the articles. *Rogers* v. *Cromack,* 123 Mass. 582. *Roberts* v. *Wentworth,* 5 Cush. 192. *Johnson* v. *Neale,* 6 Allen, 227. *Stanley* v. *Neale,* 98 Mass. 343.

The defendant might show that certain articles claimed by the plaintiff were not attached. His return contained no enumeration of the articles attached; but even if it had done so, it would not be conclusive against the defendant in an action brought by the present plaintiff to recover damages for the alleged taking. Taylor, Ev. § 854. *Stimson* v. *Farnham,* L. R. 7 Q. B. 175.

*Baker* v. *M'Duffie*, 23 Wend. 289.   *Brown* v. *Davis*, 9 N. H. 76, 82.   *Boynton* v. *Willard*, 10 Pick. 166, 169, 170, *dictum.*

The price obtained at auction was competent evidence on the question of value.   *Kent* v. *Whitney*, 9 Allen, 62.   *Brigham* v. *Evans*, 113 Mass. 538.   *Croak* v. *Owens*, 121 Mass. 28.   *Clement* v. *British American Assurance Co.* 141 Mass. 298, 301.

*Exceptions sustained.*